IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ENCOMPASS INDEMNITY COMPANY, an Illinois Company<br><br>Plaintiff,<br><br>v.<br><br>J.H., a Utah Citizen; and D.C., a Utah Citizen,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [31] MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:16-cv-00018-DN<br><br>District Judge David Nuffer |

# BACKGROUND

Plaintiff Encompass Indemnity Company is a liability insurance company. Encompass seeks declaratory relief from defending or indemnifying J.H., an insured.[1] In the Complaint for Damages (Underlying Complaint),[2] D.C. brings numerous tort and statutory claims against J.H. and others. In this Motion,[3] Encompass moves for summary judgment. Defendant D.C. opposes this motion.[4] Defendant J.H. did not file a response. Encompass replied in support of its Motion.[5]

Because the allegations in the Underlying Complaint are not an "occurrence" and therefore do not fall within the policy, the Motion is GRANTED.

**Table of Contents**
Background ........................................................................................................................... 1
Evidentiary Objections .......................................................................................................... 2
    1.    D.C.'s objection regarding J.H.'s tender of the Underlying Complaint is overruled. ......................................................................................................... 2
    2.    D.C.'s objection to admissibility of Exhibits A and B is overruled. ..................... 3

---

[1] Complaint for Declaratory Relief (Complaint), docket no. 2, filed February 4, 2016.

[2] Complaint for Damages (Underlying Complaint), 1:14-cv-00175-JNP, docket no.1, filed December 23, 2014.

[3] Motion for Summary Judgment and Memorandum in Support (Motion), docket no. 31, filed January 17, 2017.

[4] Defendant's Memorandum in Opposition (Opposition), docket no. 36, filed March 17, 2017.

[5] Reply to Response to Motion for Summary Judgment (Reply), docket no. 39, filed March 27, 2017.

Undisputed Material Facts ........................................................................................... 5
Standard of Review .................................................................................................. 13
Discussion ................................................................................................................ 14
    Encompass Does Not Have a Duty To Defend J.H. Under the Policy Because D.C.'S
        Injuries Are not "Occurrences" ................................................................... 15
        1.    Unwanted sexual contact with a minor is not an occurrence. ................... 17
        2.    Knowingly supplying alcohol to a minor is not an occurrence. ............... 18
        3.    Verbal abuse and sexual harassment at the workplace is not an occurrence.
                ................................................................................................................... 18
Conclusion ............................................................................................................... 19
Order ....................................................................................................................... 20

## EVIDENTIARY OBJECTIONS

D.C. makes numerous evidentiary objections. For the reasons that follow, those objections are overruled.

### 1. D.C.'s objection regarding J.H.'s tender of the Underlying Complaint is overruled.

D.C. argues that Encompass's reference to J.H. tendering the Underlying Complaint to Encompass is hearsay, lacks foundation, and lacks authenticity.[6] Encompass responds that J.H. already admitted to tendering the Underlying Complaint to Compass in her Answer.[7] Because of relevant judicial admissions, the question of whether J.H. tendered the Underlying Complaint to Encompass is beyond dispute.

Judicial admissions are "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are not evidence at all but rather have the effect of withdrawing a fact from contention."[8]

In the Complaint, Encompass alleges

---

[6] Opposition at 13.

[7] Reply at 2.

[8] *Keller v. U.S.*, 58 F.3d 1194, 1198 n.8 (10th Cir. 1995) (internal quotation marks omitted).

> 26. In August of 2015, J.H. provided notice and tender the Underlying [Complaint] to Encompass.[9]
> 27. Encompass conducted an investigation of the tender of the Underlying [Complaint] and on or about October 13, 2015, counsel for Encompass sent a letter to J.H. and her defense counsel informing them of Encompass' decision to defend J.H. in the Underlying [Complaint], subject to a reservation of rights.[10]

Defendant J.H. filed an answer.[11] In response to the above two paragraphs of the Complaint, J.H. stated

> 26. Defendant J.H. admits the allegations contained in paragraph 26 of Plaintiff's Complaint.
> 27. Defendant J.H. admits that counsel for Encompass sent a letter to J.H. and her defense counsel informing them of Encompass' decision to defend J.H. in the Underlying [Complaint], subject to a reservation of rights. All other allegations are denied.

Therefore, J.H. has admitted that she tendered the Underlying Complaint to Encompass. That admission is binding. Defendants' objection is overruled.

2. **D.C.'s objection to admissibility of Exhibits A and B is overruled.**

D.C. also argues that the USP Deluxe Home Insurance Policy that Encompass attaches as Exhibit A to the Motion[12] and Defense Under a Reservation of Rights Letter Encompass attaches as Exhibit B to the Motion[13] are hearsay, lack foundation, and are not authenticated.[14] Encompass makes numerous arguments for why Exhibits A and B are not hearsay, have foundation, and are authenticated.[15] Encompass also attempts to remedy the alleged issue by

---

[9] Encompass Complaint ¶ 26.

[10] *Id.* ¶ 27.

[11] Answer of J.H., Defendant, docket no. 5, filed April 4, 2016.

[12] Docket no. 31-1, filed January 17, 2017.

[13] Docket no. 31-2, filed January 17, 2017.

[14] Opposition at 14–16

[15] Reply at 2–4.

adding Additional Statement of Material Facts.[16] Exhibits A and B are admissible because Encompass's Additional Statement of Material Facts provide foundation and authenticity.

[Federal Rule of Civil Procedure 56(e)](#) states that if "a party fails to properly support an assertion of fact . . . , the court may . . . give an opportunity to properly support or address the fact." Rule 56(e) materials included in a reply brief are distinct from simply adding facts or evidence in a reply. When a moving party includes additional facts or evidence in a reply brief, a district court can "either . . . permit[] a surreply or, in granting summary judgment for the movant, it [can] . . . refrain[] from relying on any new material contained in the reply brief."[17] By contrast, Rule 56(e) evidence can be used to remedy evidentiary objections—such as lack of foundation or authenticity—without requiring the district court to disregard the material fact or allow further briefing.[18] This is because the facts or evidence would have already been present in the original motion; the Rule 56(e) materials are simply resolving any technical evidentiary deficiencies.

To authenticate and lay foundation for Exhibits A[19] and B[20] to the Motion, Encompass includes in its Reply numerous statements of fact[21] that reference a Declaration of Rebecca L. Hill (Hill Declaration)[22] and numerous attachments to the Hill Declaration (collectively "Rule 56(e) Materials"). These Rule 56(e) Materials sufficiently lay foundation and authenticate

---

[16] Reply at iii–v.

[17] *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998).

[18] *See Pfeffer v. Hilton Grand Vacaqtions Co., LLC*, No. CV. 07-00492 DAE-BAK, 2009 WL 37519, at *6 (D. Hawai'i, Jan. 7, 2009) (allowing one party to remedy evidentiary deficiencies without further briefing because the exhibits could "easily be authenticated and the exhibits do not provide anything new that Defendant was not previously aware of.").

[19] Exhibit A, docket no. 31-1, filed January 17, 2017.

[20] Exhibit B, docket no. 31-2, filed January 17, 2017.

[21] Encompass' Additional Statement of Facts 2–10, Reply at iii–v.

[22] Declaration of Rebecca L. Hill, docket no. 40, filed March 27, 2017.

Exhibits A and B to the Motion. Therefore, Encompass's Additional Statement of Material Facts[23] and the affidavit and exhibits resolve the alleged evidentiary deficiencies in Encompass's motion. The defendants' objections are overruled. And no additional briefing is required.

## UNDISPUTED MATERIAL FACTS[24]

1. D.C. filed a complaint against J.H. under seal in the United States District Court for the District of Utah on or about December 23, 2014 under civil number 1:14-cv-00175 (the "Underlying Complaint").[25]

2. The Underlying Complaint's "Statement of Facts" alleges facts and conduct common to each cause of action asserted in the Underlying Complaint.[26]

3. The Statement of Facts Section of the Underlying Complaint alleges that J.H. performed sexual acts on D.C. to which D.C. did not consent – including molestation, intercourse and oral sex – and often did so while D.C. was under the intoxicating effects of alcohol that J.H. had furnished to D.C.:

> 30. On multiple occasions in or about April 2013 and thereafter, Defendants furnished, or allowed to be furnished, alcohol and alcoholic products to minors at some or all of Defendants Properties, including to Plaintiff, a minor.
>
> 31. On or about May 16, 2013, for example, [J.H.] . . . supplied Plaintiff with alcohol, to the point that [J.H.] aided and abetted Plaintiff in becoming intoxicated.

---

[23] Reply at iii–v.

[24] This summary of the undisputed material facts is derived from the parties' memoranda. D.C.'s Statement of Additional Material (Disputed Facts) (a–h), Opposition at 17–19, are not included. As stated below, *see infra* Discussion Section, any evidence extrinsic to the Policy and the Underlying Complaint is immaterial. All the Additional Facts refer to such evidence and include information relating to the merits of the Underlying Complaint.

[25] Motion at vii (undisputed).

[26] *Id.* at vii; Opposition at 6. There is no genuine dispute of material fact. D.C. qualifies his response as follows: "Undisputed as to what the Underlying Complaint states in part, but there are other allegations particular to Negligence (First Cause of Action) and for Negligent Infliction of Emotional Distress (Seventh Cause of Action)." This does not create a genuine dispute. D.C. similarly qualifies his response to facts 2–13 below. Thus, each is deemed "undisputed".

> 32. Due to being intoxicated, Plaintiff went and laid down on a bed. After Plaintiff was lying down, [J.H.] came to Plaintiff, pulled Plaintiff's pants down, and began to perform unwelcomed sex acts to Plaintiff without his consent.
>
> 33. In doing so, [J.H.] touched the intimate parts and genitalia of Plaintiff's body, taking indecent liberties with him, such as performing oral sex and vaginal sex to him.
>
> . . . .
>
> 36. From mid-May to mid-July, multiple similar incidents took place . . . including sexual activity by [J.H.] to Plaintiff.
>
> 37. [J.H.] [had] interactions with minor boys, including Plaintiff, and her involvement towards them involve[ed] [sic] drugs, alcohol and sexual activity.
>
> . . . .
>
> 41. On or about July 11, 2013, Plaintiff attempted suicide and was hospitalized due to the emotional damages, injuries and harm he sustained as a result of Defendants' unlawful conduct to him.
>
> 42. While Plaintiff was hospitalized in July 2013, [J.H.] went to Plaintiff at the hospital and while there she engaged in further inappropriate conduct with Plaintiff.
>
> 43. Later, on or about July 23, 2013, after Plaintiff was out of the hospital and knowing of Plaintiff's condition, severe depression and troubles, [J.H.] engaged in further inappropriate conduct with Plaintiff, including further sexual activity, including intercourse.
>
> 44. On or about July 23, 2013, Plaintiff attempted suicide a second time and was taken to emergency and hospitalized due to the further emotional damages, injuries and harm he sustained as a result of Defendants' unlawful conduct to him.[27]

4. The Underlying Complaint's "Statement of Facts" otherwise alleges that J.H. furnished D.C. with alcohol:

> 26. In or about April 2013 and thereafter on multiple occasions, including at El Matador, Defendants furnished alcohol and alcoholic products to Plaintiff, whom they knew was a minor.

---

[27] Motion at vii–viii (undisputed).

> 27. Defendants' supplying of alcohol to Plaintiff, a minor, was in violation Utah's Alcoholic Beverage Control Act, Utah Code Title 32B, Chapter 4, including section 32B-4-403.
>
> 28. In or about April 2013 and thereafter, Defendants had special duties, knowledge and familiarity with prohibitions of furnishing alcohol and alcoholic products to minors.
>
> 29. Among their duties, knowledge and familiarity, including not to furnish alcohol and alcoholic products to minors, Defendants had made and taken upon themselves statutory and affirmative duties, including with the Utah Department of Alcoholic Beverage Control ("DABC"), including with respect to an application with and a liquor license[] through the DABC . . . .
>
> . . . .
>
> 96. For example, shortly after Plaintiff was hired, [J.H.] furnished regularly alcohol and alcoholic products to employees, including minors . . . .[28]

5. The statute cited in Paragraph No. 27 of the Underlying Complaint, Section 32B-4-403 of Utah's Beverage Control Act, is a criminal statute providing, in relevant part:

> (1) A person may not sell, offer for sale, or furnish an alcoholic product to a minor.
> (2)(a)(i) Except as provided in Subsection (3), a person is guilty of a class B misdemeanor if the person who violates Subsection (1) negligently or recklessly fails to determine whether the recipient of the alcoholic product is a minor.
> . . . .
> (b) Except as provided in Subsection (3), a person is guilty of a class A misdemeanor if the person who violates Subsection (1) knows the recipient of the alcohol product is a minor.[29]

6. Within the cause of action for "Violations of Civil Rights," the Underlying Complaint alleges that J.H. sexually harassed and verbally abused D.C. while D.C. was working at El Matador, and from that conduct alleges economic losses and other injuries:

> 92. At all times during Plaintiff's employment at El Matador, [J.H.] was Plaintiff's superior, supervisor and an owner, principal, and officer of El Matador.
> . . . .
> 95. Beginning in May 2013, and thereafter, Plaintiff, a male and a member of a protected class, was subjected to repeated severe and pervasive harassment, including

---

[28] *Id.* at viii-ix(undisputed).

[29] *Id.* at ix (undisputed).

7

sexual harassment, with numerous unwelcomed and offensive crude, lewd verbal abuse directed to Plaintiff by [J.H.], a female, including because of and based on Plaintiff's sex.

. . . .

98. Defendant would also make sexually explicit and verbally harassing comments to others, including to Plaintiff, such as: "It's hard to work with you because I want to fuck you."

99. Defendant [J.H.] would also make quid-pro-quo promises to keep Plaintiff [D.C.] "happy", with physical and inappropriate touching, hugging, and kissing [D.C.], with promises by Defendants to Plaintiff [D.C.] of pay raises, including one for $.50/hour.

. . . .

101. Notwithstanding the above, and despite Plaintiff's questioning to his superiors, including [J.H.], Plaintiff was subjected to further harassment, hostile work environment, discrimination, ridicule, insult, abuse, intimidation, fear of reprisal, and retaliation.

. . . .

104. As a result of actions of El Matador, including by its agent and proxy, [J.H.], Plaintiff has suffered irreparable injuries and is entitled to damages, including but not limited to, actual damages such as back and front pay, compensatory damages, and other economic loses [sic], emotional pain and suffering, mental anguish, humiliations, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated, as well as for punitive damages, attorney fees and costs.[30]

7. The Underlying Complaint alleges that "[J.H.] engaged in all or some of the wrongful acts and omissions . . . while under the supervision and control of the Defendants [El Matador and its owners] as their agents.[31]

8. The Underlying Complaint's "Statement of Facts" alleges that J.H. was 39 years old and D.C. was 16 years old at the time when J.H. performed unwanted sex acts on D.C., furnished D.C. with alcohol, and mentally abused and sexually harassed D.C. at work. The Underlying Complaint further alleges that at the time J.H. was committing these acts she knew that D.C. was a minor.[32]

---

[30] *Id.* at ix–x (undisputed).

[31] *Id.* at x (undisputed).

[32] *Id.* at x–xi (undisputed).

8

9. The Underlying Complaint's "Statement of Facts" alleges harm to D.C. from the alleged conduct of J.H. or the other Defendants named in the suit:

> 41. On or about July 11, 2013, Plaintiff [D.C.] attempted suicide and was hospitalized due to the emotional damages, injuries and harm he sustained as a result of Defendants' unlawful conduct to him.
>
> 42. While Plaintiff [D.C.] was hospitalized in July 2013, [J.H.] went to Plaintiff [D.C.] and while there she engaged in further inappropriate conduct with Plaintiff.
>
> 43. Later, on or about July 23, 2013, after Plaintiff [D.C.] was out of the hospital and knowing of Plaintiff's condition, severe depression and troubles, [J.H.] engaged in further inappropriate conduct with Plaintiff, including further sexual activity, including intercourse.
>
> 44. On or about July 23, 2013, Plaintiff [D.C.] attempted suicide a second time and was taken to emergency and hospitalized due to the further emotional damages, injuries and harm he sustained as a result of Defendants' unlawful conduct to him.
>
> 45. On or about August 7, 2013, [J.H.] was contacted by law enforcement.[33]

10. The Underlying Complaint asserts six causes of action against J.H. for: 1) Negligence; 2) Civil Assault; 3) Civil Battery; 4) Unlawful Sexual Activity and/or Abuse of a Child – Negligence and/or Intentional; 5) Negligent Infliction of Emotional Distress; and 6) Intentional Infliction of Emotional Distress.[34]

11. The causes of action are each based on the conduct alleged in the Underlying Complaint's "Statement of Facts."[35]

12. The causes of action for Civil Assault, Civil Battery, Unlawful Sexual Activity and/or Abuse of a Child and Intentional Infliction of Emotional Distress asserted against J.H. each allege that J.H.'s actions were unlawful, and that she knew or should have known that her

---

[33] *Id.* at xi (undisputed).

[34] *Id.* at xi (undisputed).

[35] *Id.* at xii (undisputed).

9

conduct "with minor child Plaintiff would cause both permanent emotional harm and permanent physical harm to Plaintiff."[36]

13. With respect to the causes of action for Negligence and Negligent Infliction of Emotional Distress asserted against Defendants, including J.H., the Underlying Complaint provides:

**FIRST COUNT**
**(Negligence)**
**(Breach of Duties, Including Statutory Duties, Assumed Duties and Affirmative Duties)**

> 50. Defendants owed statutory and other legal duties to Plaintiff, including not to furnish alcohol or alcoholic products to minors. Utah's Alcoholic Beverage Control Act, Utah Code Title, 32B, Chapter 4, including section 32B-4-403.
>
> 51. Plaintiff, then a minor, was a member of the class of individuals intended to be protected by law, including by Utah Code Ann. § 32B-4-403.
>
> 52. Defendants negligently or recklessly breached their duties of reasonable care and furnished or allowed to be furnished alcohol and alcoholic products to Plaintiff, then a minor, repeatedly and on numerous occasions.
>
> 53. Defendants' continuing to provide alcohol, including to minors, including Plaintiff, was reasonably foreseeable at the time of these breach of duties.
>
> 54. Defendants owed statutory and other legal duties to Plaintiff, including not to engage in, assist, enable or be involved with complicit or otherwise unlawful sexual activity with minors, including Plaintiff. Utah Code Ann. 78B-2-308.
>
> 55. Plaintiff, then a minor, was a member of the class of individuals intended to be protected by law, including Utah Code Ann § 78B-2-308.
>
> 56. Defendants negligently or recklessly breached their duties of reasonable care and engaged in, assisted in, enabled and/or were involved with unlawful sexual activity, including to Plaintiff repeatedly and on numerous occasions.
>
> 57. Defendants owed additional statutory and other assumed and/or affirmative legal duties to Plaintiff, including to provide adequate supervision, safety and/or security so that Plaintiff would not be injured or harmed.
>
> 58. Plaintiff, then a minor, was a member of the class of individuals to be protected, including by being on or as an invited or permissive guest to the 1411 South Property and/or the Jacqueline Property.

---

[36] *Id.* (undisputed).

59. Defendants negligently or reckless [sic] breached their duties of reasonable care and allowed and caused Plaintiff to be subjected to injury and harm, including at the 1411 South Property and the Jacqueline Property where Defendants breached and failed in their duties to provide adequate supervision, safety and security to Plaintiff.

60. Defendants' negligent or reckless conduct, directly, consequentially, and/or indirectly, constituted breached [sic] of the duties Defendants owed Plaintiff, including with respect to not damaging or otherwise harming Plaintiff.

61. As a direct and proximate result of these repeated breaches of duties of reasonable care by Defendants, Plaintiff suffered severe, permanent physical and emotional harm . . . .

### SEVENTH COUNT
### (Negligent Infliction of Emotional Distress)
### (Against All Defendants)

111. Defendants engaged in outrageous conduct and acted with negligent and/or reckless disregard of the consequences of Defendants' conduct, acting in a negligent manner reasonably calculated to cause or resulting in Plaintiffs' severe emotional distress and physical and emotional anguish, fear, and injury. Defendants' conduct, described above, has caused, and continues to cause, Plaintiff severe emotional distress.[37]

14. J.H. tendered the Underlying Complaint to Encompass.[38]

15. Encompass accepted J.H.'s tender of defense, but did so under a reservation of rights to deny coverage and under a reservation to file the above-captioned declaratory judgment suit.[39]

16. Encompass issued to J.H. a USP Deluxe Home Insurance Policy, Policy No. 281339613, Policy Period 10/05/2012 to 10/05/3013 ("Homeowners Policy").[40]

17. The Insuring Agreement of the liability portion of the Homeowners Policy provides in relevant part:

**LIABILITY COVERAGE – HOME**

---

[37] *Id.* at xii–xiv (undisputed).

[38] *Id.* at xiv; Opposition at 13. Resolved in Reply at iii (Encompass' Additional Statement of Fact No. 1).

[39] Motion at xiv; Opposition at 13. Resolved in Hill Declaration ¶ 12.

[40] Motion at xiv; Opposition at 14. Resolved in Reply at iii–v (Encompass' Additional Statements of Fact Nos. 2–10).

11

**PERSONAL LIABILITY – INSURING AGREEMENT**
If a claim or suit is brought against you or any covered person for the following:
1. Personal Injury,

2. Bodily Injury, or

3. Property Damage,
caused by an occurrence to which this coverage applies, we will:

(1) Pay on your behalf claims for which you or any covered person are legally liable, including pre-judgment interest awarded against you or any covered person, up to our limit of liability; except as excluded by the provisions listed in the **Liability Coverage – Losses We Do Not Cover**; and

(2) Provide defense costs for the counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from an occurrence equals our limit of liability.[41]

18. The Homeowners Policy contains several coverage exclusions which are relevant to the claims and causes of action alleged by D.C. against J.H. in the Underlying Complaint:

**LOSSES WE DO NOT COVER**
**1. Personal Liability and Medical Expense** coverages do not apply to bodily injury or property damage:
. . . .
h. Intended by, or which may reasonably be expected to result from intentional or criminal acts or omissions of one or more covered persons.
This exclusion applies even if:
   (1) Such covered person lacks the mental capacity to govern his or her conduct;

   (2) Such bodily injury or property damage is of a different kind or degree than that intended or reasonably expected; or

   (3) Such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such covered person is actually charged with or convicted of a crime.
. . . .
j. Arising out of business pursuits of you or any covered person. This exclusion does not apply to:

---

[41] Motion at xiv–xv; Opposition at 14–15. Resolved in Reply at iii–v (Encompass' Additional Statements of Fact Nos. 2–10).

(1) Activities which are usual to non-business pursuits; or

(2) Part-time business pursuits of any covered person who is under 18 years of age.

. . . .

o. Arising out of sexual molestation, corporal punishment or physical or mental abuse. However, we will cover your liability for corporal punishment to any pupil if coverage for corporal punishment is shown on the Coverage Summary.

p. Resulting from criminal acts or omissions of or at the direction of one or more covered persons. This exclusion applies even if:

(1) Such covered person lacks the mental capacity to govern his or her conduct;

(2) Such covered person is not actually charged with or convicted of a crime.[42]

19. The Homeowner's Policy contains the following definition of "bodily injury," "business," and "occurrence" in relevant part:

2. Bodily Injury means physical bodily harm, including sickness or disease. This includes required care, loss of services and death resulting therefrom.

3. Business includes trade, profession or occupation, farming or ranching or any activity aimed at providing a product or a service with the anticipation of economic gain from the enterprise. The providing of home day care services in exchange for monetary or other compensation, such as services to other than a relative of a covered person, is considered a business pursuit.

. . . .

10. **Occurrence means:**

. . . .

a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.[43]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[44] A factual dispute is genuine when

---

[42] Motion at xv–xvi; Opposition at 15–16. Resolved in Reply at iii–v (Encompass' Additional Statements of Fact Nos. 2–10).

[43] Motion at xvii; Opposition at 16. Resolved in Reply at iii–v (Encompass' Additional Statements of Fact Nos. 2–10).

[44] Fed. R. Civ. P. 56(a).

13

"there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[45] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[46]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[47] In this case, Encompass must make a prima facie demonstration that it does not have a duty to defend or indemnify J.H. under the Policy. "An insurance policy is merely a contract between the insured and the insurer." Determining whether Encompass has a duty to defend or indemnify J.H. in the underlying action requires using state contract interpretation principles.[48] "The duty to defend is generally broader than the duty to indemnify, so if there is no duty to defend, there can be no duty to indemnify."[49] Thus, a duty-to-indemnify analysis will only be done if Encompass has a duty to defend J.H. under the Policy.

## DISCUSSION

Encompass argues that it does not owe a duty to defend J.H. because J.H.'s actions were not "occurrences."[50] Encompass is correct. It does not have a duty to defend. And because Encompass does not have a duty to defend J.H., a duty to indemnify analysis is unnecessary.

---

[45] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[46] *Id.*

[47] *Id.* at 670-71.

[48] *Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1213 (Utah 2006).

[49] *Mid-America Pipeline Co., LLC v. Mountain States Mut. Cas. Co*, No: 2:05-CV-153 DB, 2006 WL 1278748 at *1 (D. Utah May 8, 2006).

[50] Motion at 5–12.

**Encompass Does Not Have a Duty To Defend J.H. Under the Policy Because D.C.'S Injuries Are not "Occurrences"**

Under Utah law, when undertaking a duty-to-defend analysis, the focus is on two documents: "the insurance policy and the complaint."[51] The analysis begins by "comparing the language of the insurance policy with the allegations of the complaint . . . and the starting point must always be the underlying policy."[52] Additionally, when comparing the policy language to the allegations of the complaint, "Utah law looks to the substance of a particular claim not its form."[53]

The Policy states:

If a claim or suit is brought against you or any covered person for the following:
    1. Personal Injury,
    2. Bodily Injury, or
    3. Property Damage,
caused by an occurrence to which this coverage applies, we will:
. . .
Provide defense costs for the counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from an occurrence equals our limit of liability.[54]

The parties do not dispute that D.C. has properly alleged "bodily injury" in the Underlying Complaint. Thus, the analysis hinges on the definition of "occurrence." The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage."[55]

---

[51] *Benjamin*, 140 P.3d at 1214.

[52] *Id*.

[53] *Great American ins. Co. v. Woodside Homes Corp.*, 448 F.Supp.2d 1275, 1285 (D. Utah 2006).

[54] Exhibit A to Motion at 32.

[55] *Id*. at 47.

15

The Utah Supreme Court has consistently defined the term "accident" in connection to insurance policies as:

> The probable consequence of the use of given means is the consequence which is more likely to follow from their use than it is to fail to follow. *An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means.*[56]

Harm resulting from the "natural and probable consequence[s] of an act" will not be considered an "occurrence" under the Policy. When examining the "natural and probable consequences" of the insured's act, it is measured against an "average individual" standard, i.e. "what the average individual would expect to happen under the circumstances."[57]

Thus, there are "two independent methods by which bodily injury or property damage may be deemed nonaccidental. First, harm or damage is not accidental if it is the result of actual design or intended by the insured. Second, harm or damage is not accidental if it is the natural and probable consequence of the insured's act or should have been expected by the insured."[58]

The D.C. Complaint asserts three types of conduct that resulted in injury: (1) unwanted sexual contact, including molestation, oral sex, and intercourse, with a minor; (2) knowingly supplying alcohol to a minor; and (3) verbal abuse and sexual harassment in the workplace.[59] All eight of the causes of action in the D.C. complaint allege injuries resulting from the above conduct. Looking at the substance of the claims, the definition of "accident" and its analysis will be limited to the above categories of conduct, rather than the specific causes of action.[60]

---

[56] *N.M. on behalf of Caleb v. Daniel E.*, 175 P.3d 566, 569 (Utah 2008) (emphasis added).

[57] *Id.* at 570.

[58] *Id.* at 569.

[59] *See* Underlying Complaint.

[60] *See Great American ins. Co.*, 448 F. Supp. 2d at 1285.

D.C. argues that the Policy covers his negligence claims.[61] The allegations in his claims for negligence are not independent from the conduct discussed above. They are related and interdependent. Without the underlying sexual molestation, sexual harassment, and supplying of alcohol, there would be no basis for a suit against J.H. for negligence.[62] The harm resulting from J.H.'s actions does not constitute an "occurrence" simply because it resulted from negligence rather than intentional acts.

### 1. Unwanted sexual contact with a minor is not an occurrence.

First, D.C. alleges that J.H. sexually molested him in J.H.'s home and various other places.[63]

As Encompass correctly points out,[64] there is no allegation in the Underlying Complaint that J.H. "design[ed] or intended" to cause D.C. harm. The question then is whether D.C.'s alleged injuries are "the natural and probable consequence of [J.H.'s] act or should have been expected by" J.H.

"Some actions . . . are so likely to result injury that, as a matter of law, the court will find that the injury did not result from an accident regardless of the actor's subjective intent or expectations . . . . Ordinarily, sexual molestation of a minor by an adult falls within" this category of actions.[65] Though the Utah Supreme Court has yet to adopt this per se rule, many jurisdictions have.[66] Therefore, an injured minor "is the natural and probable consequence of" molestation, and this should be "expected by the insured."

---

[61] Opposition at 20.

[62] *See GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1118 (7th Cir.1995)

[63] Underlying Complaint ¶¶ 31–36.

[64] Motion at 6.

[65] *Allstate Ins. Co. v. Patterson*, 904 F. Supp. 1270, 1280 (D. Utah 1995).

[66] *See Manufacturers and Merchants Mut. Ins. Co. v. Harvey*, 330 S.C. 152, 159 n.1 (S.C. Ct. App. 1998) (collecting cases and finding that "[e]very jurisdiction having the opportunity to consider the issue in the context of sexual

Therefore, the injuries which resulted from J.H. (an adult) molesting D.C. (a minor) were not an accident because the natural and probable consequence of sexual molestation of a minor is harm to the minor. Therefore, Encompass does not have a duty to defend J.H. under the Policy.

### 2. Knowingly supplying alcohol to a minor is not an occurrence.

Second, D.C. alleges injury from J.H. knowingly supplying alcohol to D.C.[67] There is no allegation in the Underlying Complaint that J.H. "design[ed] or intended" to cause D.C. harm. The question is again whether D.C.'s alleged injuries from being given alcohol are the "natural and probable consequence of [J.H.'s] act or should have been expected by" J.H.

Injury resulting from an adult providing alcohol to a minor is not an accident. It is reasonable to expect an average person to know that alcohol harms minors.[68] Many jurisdictions have held that injuries resulting from an adult supplying a minor with alcohol is not an accident.[69]

Therefore, the injuries which resulted from J.H. (an adult) supplying D.C. (a minor) alcohol were not an accident because the natural and probable consequence of supplying a minor alcohol is harm to the minor.

### 3. Verbal abuse and sexual harassment at the workplace is not an occurrence.

Third, D.C. alleges injuries from sexual harassment and verbal abuse in the workplace.[70] Specifically, D.C. alleges that J.H. would inappropriately touch, hug, and kiss D.C. during the

---

molestation of a minor by an insured has adopted the 'inferred intent' doctrine and found that the intent to perform the act of molestation is sufficient to infer the intent to harm the child.").

[67] Underlying Complaint ¶¶ 26–31.

[68] *Allstate Ins. Co. v. J.J.M.*, 657 N.W.2d 181, 184 (Mich. Ct. App. 2002).

[69] *Sheely v. Sheely*, No. 2-10-38, 2012 WL 34451, at *9 (Ohio Ct. App. 2012) (collecting cases).

[70] Underlying Complaint ¶¶ 94–104

workday with promises to give quid-pro-quo pay raises and other promises.[71] And D.C. alleges that J.H. repeatedly directed offensive, crude, and lewd verbal abuse towards D.C.[72] There is no allegation in the Underlying Complaint that J.H. "design[ed] or intended" to cause D.C. harm. The question is again whether D.C.'s alleged injuries from being sexually harassed and verbally abused in the workplace are the "natural and probable consequence of [J.H.'s] act or should have been expected by" J.H.

Many courts have stated that injury borne from sexual harassment and verbal abuse is not accidental because injury is the natural and probable consequence of that behavior. "[I]t strains the imagination to speculate how a pattern of sexual overtures and touching can be 'accidental.'"[73] This is especially true when the harassment involves power disparity such as between an adult manager and a minor subordinate.

Therefore, the alleged injuries which resulted from J.H. allegedly sexually harassing and verbally abusing D.C. were not an accident because the natural and probable consequence of sexual harassment and verbal abuse is harm to the victim.

## CONCLUSION

There are no genuine disputes of material fact in this case. The undisputed facts establish that Encompass does not have a duty to defend J.H. in the underlying action under the Policy because the harm D.C. suffered as a result of J.H.'s actions was not due to an "occurrence."

---

[71] *Id.*

[72] *Id.*

[73] *Commercial Union Ins. Cos. V. Sky, Inc.*, 810 F.Supp. 249, 253 (W.D. Ark. 1992); *see also Russ v. Great American Ins. Companies*, 121 N.C. App. 185, 188 (N.C. Ct. App. 1995) ("acts of sexual harassment are so nearly certain to cause injury that intent to injure can be inferred as a matter of law.") (collecting cases).

19

**ORDER**

IT IS HEREBY ORDERED that Encompass's Motion and Supporting Memorandum for Summary Judgment is GRANTED.

The clerk of the court is directed to CLOSE this case.

Signed May 12, 2017.

BY THE COURT

_____
District Judge David Nuffer